ALBERT deBARY, JR., INC., Respondent, *v.* AGAR-BERNSON COR-
PORATION, Appellant.

First Department, April 4, 1924.

Sales — action by buyer for failure of seller to deliver balance of goods —
defense that buyer did not open " subsidiary credit " in favor of defend-
ant — contract contemplated that plaintiff would establish credit in
favor of defendant based upon credit procured by foreign principal in
favor of plaintiff — evidence does not establish opening of " subsidiary
credit "— verdict for plaintiff against weight of evidence.

In an action by a buyer for the failure of the seller to deliver the balance of goods
under a contract providing that the plaintiff would cause " subsidiary credit
to be opened in favor of the defendant with the Guaranty Trust Company,"
it appeared that the goods were being purchased for a foreign principal which
established credit at the Guaranty Trust Company in favor of the plaintiff
and payable to parties whom it should indicate; that plaintiff wrote defendant
that the foreign principal would establish such credit long before the defendant
would be ready to submit railroad bills of lading and also wrote to the Guaranty
Trust Company that defendant would draw against deliveries to be made
pursuant to the contract, but the Guaranty Trust Company never notified
defendant that credit had been established in its favor; and that defendant
claims that plaintiff never established the " subsidiary credit " called for by
the contract.

*Held,* that the contract contemplated that plaintiff in its turn would establish a
letter of credit in favor of the defendant with the Guaranty Trust Company
which would be based upon the letter of credit procured by the foreign principal
in favor of the plaintiff; that the evidence does not establish the opening of the
" subsidiary credit;" and that a verdict in favor of the plaintiff is against the
weight of the evidence.

APPEAL by the defendant, Agar-Bernson Corporation, from a
judgment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of New York on the 19th
day of March, 1923, upon the verdict of a jury, and also from an
order entered in said clerk's office on the 28th day of March, 1923,
denying the defendant's motion for a new trial made upon the
minutes.

*Samuel C. Steinhardt [Walter S. Newhouse* with him on the
brief], for the appellant.

*Leslie J. Tompkins,* for the respondent.

MARTIN, J.:

On October 1, 1920, the plaintiff and defendant entered into
a contract for the delivery of 1,500 tierces of lard. The contract
provides that the defendant should deliver to plaintiff the lard
in question to be shipped immediately from the west at a price

of twenty-two cents per pound, f. a. s. New York, to be paid for net cash against railroad bill of lading, Chicago Board of Trade certificate of inspection and weights attached, delivered to steamer New York city before October fifteenth; and plaintiff further agreed that it would cause " subsidiary credit " to be opened *in favor of the defendant* with the Guaranty Trust Company. Plaintiff accepted this contract and wrote defendant a letter, with a post-script reading as follows:

" P. S. When originally placing this order with us, our Berlin people informed us that credit would be opened at the Guaranty Trust Co. of New York. On September 27th we cabled back to them to advise the Guaranty Trust when opening such credit to pay against sight draft attached to Railroad Bills of Lading, etc. On the 30th they confirmed to us that they would instruct the Guaranty Trust accordingly, so that there is absolutely no question about this credit being opened. We are cabling at once that we have executed their order, by urgent wire, and immediately upon receipt of our wire by them, they will cable the Guaranty Trust the opening of this credit in our favor.

" Long before you will be ready to submit Railroad Bills of Lading this credit will have been opened.

" A. B. BRADIE."

Defendant delivered 470 tierces, but failed to deliver the rest, which the plaintiff thereafter and on the 20th day of October, 1920, purchased in the open market at twenty-two and three-fourths cents per pound, the excess over the contract price being the amount awarded the plaintiff by the jury.

The position of defendant is that plaintiff never established the " subsidiary credit " called for by the contract, and that, therefore, plaintiff did not perform on its part. Contending that it did establish such credit, plaintiff's theory is that of full performance by it and not that there was a waiver of or excuse for non-performance.

The goods were being purchased for a foreign principal in Germany which established the credit at the Guaranty Trust Company, New York city, in favor of plaintiff and payable to parties whom it should indicate. Plaintiff wrote to the Guaranty Trust Company that defendant would draw against deliveries to be made pursuant to the contract. The question principally litigated at the trial was whether this notice constituted the opening of a subsidiary credit in favor of defendant, as required by the contract.

Though ultimately leaving the question to the jury, the trial

court volunteered an assertion which practically excluded from their consideration the decision of this question, saying: " I think this was a subsidiary letter, both technically and actually."

Plaintiff's witness Sullivan, an employee of the Guaranty Trust Company, testified that it did not notify defendant of the opening of the credit or that drafts for the goods would be paid. According to a witness for defendant, with such a notice from the bank defendant could have financed the purchase of the lard with its own bank, thus indicating its purpose in obtaining the agreement to furnish them with the subsidiary credit. In fact, plaintiff's principal witness, Bradie, testified that it had secured a letter of credit, not because it doubted the financial responsibility of the foreign principal or to insure payment to plaintiff, but because its effect was to enable the purchases to be financed with the credit furnished by the foreign principals instead of on plaintiff's credit.

It will be noticed that the contract provides that the subsidiary credit is to be opened in " your favor," that is, in favor of defendant. Plaintiff's witness testified: " A subsidiary credit is a credit issued with another credit as collateral. * * * A subsidiary credit is for the benefit of a third party on the order of the second party. * * * I don't know from a legal standpoint whether that [plaintiff's notice to honor drafts for the goods] would constitute the opening of a credit or not."

He further testified: " By the Court: A subsidiary credit is necessary to open another credit in favor of the third party? A. If we were to write to Agar-Bernson confirming to them that we would pay their draft, giving them the amount that we would pay and the conditions under which we would pay it, that would be regarded as a subsidiary credit. By Mr. Tompkins. Q. Did you write to the Agar-Bernson Company? A. No, we did not write. * * * Q. Yes, but the purpose of issuing the letter is to give the person — A. To give the beneficiary some concrete proof that the credit has been established. * * * Q. And binds your bank? A. It is binding on the bank issuing it, of course. A. And such a credit as was given you under the defendant's letter of October 8th, that is revocable at the pleasure of the person giving you the instructions, is it not, prior to the time that drafts have been presented? A. Under this arrangement here, the instructions of Mr. deBary are irrevocable."

He also testified that " the fact that the instructions were given without stating that the said instructions were subject to revocation makes them irrevocable."

It appears, therefore, that, after notice had been given by the bank of the opening of credit, the defendant would have had

an irrevocable credit upon which to finance the purchase of goods and fulfill its contract to plaintiff.

There is some testimony to the effect that defendant expressed satisfaction when informed of the notification given by plaintiff to the Guaranty Trust Company; but this could hardly be performance of the requirement of the contract. If a subsidiary credit is to be taken as calling for a notification to defendant, then plaintiff never performed on its part.

Defendant called a witness from the Chemical National Bank, who testified that a subsidiary credit is based on another credit and would have to be in some form of writing; that it "is usually issued for the purpose of giving the third party a contract under which he is insured that the financial institution issuing that subsidiary credit will honor his drafts;" that "If we issue a credit it is never a credit in our understanding until we have written it up and signed it;" that the credit here "is a plain commercial letter of credit, but I would not consider it a subsidiary credit."

Defendant did deliver two small shipments and drew on the Guaranty Trust Company for payment; but it proved that these were financed by its checks, offering testimony to the effect that the balance of the contract was too large a matter to finance in that manner, thus indicating that the subsidiary credit was stipulated for in order to enable defendant to finance the transactions which involved a large sum of money.

We are of the opinion that the purchases of the lard contemplated that plaintiff in its turn would establish a letter of credit in favor of defendant with the Guaranty Trust Company, which would be based upon the letter procured by the foreign house in favor of plaintiff.

The expert testimony produced by both parties tended rather to sustain defendant's contention than that of plaintiff, and to show that plaintiff had not established the subsidiary credit called for by the contract.

The verdict was against the weight of evidence, and despite the charge as to whether or not plaintiff did furnish subsidiary credit called for by the contract, the court inadvertently ruled, in substance, that plaintiff had duly performed.

The judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

Dowling, Smith, Merrell and Finch, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.